Case number 20-3446 Homero Garcia-Ortiz v. Merrick B. Garland Mr. Bogart? Yes, thank you, Your Honor. May it please the court, my name is Nathan Bogart and I represent the petitioner Mr. Homero Garcia-Ortiz. This case arises from an application for cancellation of removal for certain non-permanent residents pursuant to 8 U.S.C. 1229B.B.1 presented removal proceedings. In briefing, the main issue involved the jurisdiction of this court to review the hardship determination of the Board of Immigration Appeals and immigration judge. This court has jurisdiction to review the board's decision that Mr. Garcia-Ortiz failed to show exceptional and extremely unusual hardship to his U.S. citizen children such that he was eligible for cancellation. This is significant and it is a big ask on our part because generally the federal courts lack jurisdiction to consider an agency's discretionary or factual determinations when it comes to the hardship standard and cancellation proceedings. Even so, the hardship standard is generally a mixed question of fact and law and the courts of appeal do retain jurisdiction where legitimate questions of law are raised concerning the board and before the I.J. committed two legal errors that we've identified in applying the hardship standard. The first was that it erroneously concluded that Mr. Garcia-Ortiz had an alternative means of immigrating to the United States because there was a distinct possibility his U.S. citizen son could petition him. And the second is the I.J. and the board both failed to consider how Mr. Garcia-Ortiz's removal might affect his children in the future. Going to the first error, at the immigration court level, the immigration judge concluded there was a distinct possibility Mr. Garcia-Ortiz could come back. Counsel, since your time is short, let me interrupt you. Didn't the BIA disown that? I had footnotes saying we don't comment on all the other stuff and they didn't mention that in their opinion. Yeah, I think that's a really interesting question and the government did a great job in their brief of outlining that. Our position is kind of twofold. The first issue is that when they affirmed the I.J.'s decision, they didn't really add their own legal analysis. So we would state that they really more or less adopted and affirmed the I.J.'s decision. They did discuss some of his analysis and just cited to it approvingly stating that they didn't see any error. They also did cite specifically to the pages in the judge's written decision where he discussed hardship, including his erroneous legal conclusion. So that's the first issue. The second issue is just that, you know, the kids. So disclaiming reliance on something is adopting it unless you somehow provide more analysis? No, your honor, it's not necessarily. We're saying they didn't disclaim at all that they still cited to the portion of the decision where he rendered that analysis. But just as importantly, the cancellation analysis is really a cumulative analysis. You know, they're looking at all the positive and negative factors and then determining whether or not in the aggregate hardship exists. And so for the board to essentially ignore a number of totality to get to the exercise of discretion, it is very difficult. It's a it's a it's a tough hill. It is. It is. And so, you know, our position, first and foremost, is just that they adopted that decision because they do cite to those pages of the written decision approvingly. And so the mere fact that they didn't necessarily mention that legally erroneous conclusion doesn't necessarily mean that they disavow themselves of that conclusion. And it was a tremendous error because the I.J. really framed his entire hardship analysis through that lens that Mr. Garcia-Ortiz would have options to come back to the United States. And it couldn't have been any more wrong because the I.J. really misunderstood the bars of inadmissibility as contained in the Immigration Nationality Act to where Mr. Garcia-Ortiz really has no hope of ever returning to the United States because even if his son petitions him, he's subject to a bar of inadmissibility that while it has a waiver, he doesn't have a qualifying relative that qualifies him for that waiver. So it's very problematic if the if the court and the board are going to look through that particular frame of reference. Now, the forward-looking analysis is also problematic, and, you know, there's not a lot of decisions, and we'll admit that, where this court has come in and said that the board or an immigration judge committed legal error in the cancellation analysis. But in Gomez-Perez, this court did acknowledge the possibility that if the board and the I.J. do not look forward, then that could be legal error. Now, in Gomez-Perez, they found that the petitioner in that case did not meet that particular burden, but they did acknowledge that possibility. And here we also have a pretty interesting situation in the sense that Mr. Garcia-Ortiz presented significant evidence demonstrating some of his children's diagnoses, some of the suffering that they'd already gone through in the past that they were going through at the time. But the I.J. and the board really looked at that evidence and said, well, we think, in particular, his daughter Rosa, who had a significant mental health diagnosis, that we think she's doing okay now and just kind of ended it there. They didn't really discuss how her diagnosis might affect her in the future, which we think is a very important part of that hardship analysis. What about the futures-looking language of will likely, will face, the wills that you're aware of? What about those? Sure. That's in the statute, and the board certainly cited correctly to the statute. But when you look at their analysis, I don't think that they really asked those questions or considered the evidence that Mr. Garcia-Ortiz presented regarding those future potential hardships. So, from our perspective, the board and the I.J. were really just concerned with the current situation that Mr. Garcia's children were facing at that time. What about the flat-out statement that we understand that respondent's family will likely encounter difficulties in the respondent's absence? You say you understand it's in the statute, but that's not a statement about the statute. That's correct, Your Honor. It's a statement about what they understand about what will happen to the family. Yes, that is correct. And I could be mistaken, but my understanding is in that statement and their decision, they're speaking specifically of economic and emotional hardship. They're not discussing the health and medical hardship that his daughter, Rosa, might face in the future, which is still one of the factors they have to consider. Well, it says, while we sympathize with respondent's children and we understand the respondent's family will likely encounter difficulties in the respondent's absence. It doesn't specify further that it's only referring to economics. Okay. A reading of that is that they were only talking about economic hardship and not about the daughter's mental health. Is that your concern? I do. That is my concern because as you go further into their decision, those are the only two hardships they identify, the economic and the emotional. There is a later sentence that says, to the extent he argues that his departure would cause financial hardship, economic detriment alone is not enough, but that's responding to one of your client's particular arguments, I think. Yes, and certainly our client did argue all of the hardship factors, and so I can see your point there, Your Honor. Okay. Thank you. Thank you. And with that, if possible, I'd like to reserve the remainder of my time for rebuttal. Very good, counsel. Ms. Glazer? Good morning. May it please the court, Sherry Glazer appearing on behalf of the United States Attorney General. Your Honors, the instant case addresses the interplay between 8 U.S.C. 1252 A2B and 8 U.S.C. 1252 A2D. And if I could just start off by addressing the first statement that Mr. Garcia-Ortiz's counsel brought up, that in his brief, he made it very clear that he's not challenging the actual exceptional and extremely unusual hardship determination, because as this Court has long held and recently held in a decision, published decision on July 20th, that is, in fact, a discretionary determination. Now he seems to be arguing that it is something that this Court has jurisdiction to review, because it's a mixed question of law and fact, and that's not an argument that he presented in any way, shape, or form in his brief. In his brief, he presented pure questions of law, which this Court, of course, does have jurisdiction to review under 1252 A2D, the first, as he mentioned, being the immigration judge's determination or the immigration judge's what he calls legal error in concluding that he had an alternative means of immigrating to the United States. Now, as we argue in our brief, this Court has long held that it reviews only the Board's decision as the final agency action, and then the immigration judge's findings and reasonings is as they were, in fact, adopted by the Board. But the Board here did not adopt that reasoning, and that becomes very clear when you look at the footnotes on page 4 in this case. That's where the Board addressed the arguments that Mr. Garcia-Ortiz made on appeal to it. The first, it's very clear in the first footnote that it's addressing a different argument, the argument that the immigration judge was impermissibly speculative in finding that his wife and family would not accompany him to Mexico. He said in his application and in his testimony that his family would not go to Mexico. And that argument in his appellate brief on appeal to the Board, as the Board points out, was on page 11. And then in the second footnote, it addresses sort of an overarching argument that the immigration judge did not consider all the evidence when it determined that he didn't show that Rosa would suffer exceptional and extremely unusual hardship upon his removal. That's on page 5 to 7 of his brief on appeal to the Board. And this particular argument regarding an alternative means of immigrating to the United States was on pages 8 to 9 of his argument, of his appeal on a brief to the Board. And as this Court noted in footnote 3, the Board specifically found it unnecessary to address any of the other arguments that he made on appeal to it, this being one of them. And therefore, it's simply not part of the Board's decision. It's not before this Court. And with regards to his second argument, that the immigration judge and the Board didn't engage in a forward-looking analysis, again, the Government would argue that... I'm sorry, Judge Loken, were you asking a question? Oh, okay. That that is, in fact, a legal error that this Court has jurisdiction to review. But as has been pointed out, on the face of the Board's decision, there's absolutely no indication that it did not engage in a forward-looking analysis. Every time it analyzed the issue, it analyzed whether his United States citizen children will suffer hardship upon his removal. And in his brief, he really focuses on a Ninth Circuit decision, Alvarez-Figueroa. And in that case, there were two qualifying relatives, two children, one children who had an ocular disorder and astigmatism, and another child who received a lot of help with school and received help by a medical, psychological, social worker. And the Ninth Circuit decision makes it very clear that, in that case, it was a current-looking analysis rather than a forward-looking analysis when it came to the hardship. That the immigration judge and the Board, the Court was reviewing both decisions in that case, looked at the ocular disorder and astigmatism and said, well, these don't... having an ocular disorder and astigmatism is not exceptional and extremely unusual hardship. And that the assistance that the second child was receiving when it came to school is not exceptional and extremely unusual hardship. But there was absolutely no analysis in those decisions as to whether those two children will suffer the hardship upon his removal. And that is simply just not the case here. And just one other point to point out, to make sure it was clear in my brief, within that second argument, he focuses on whether the immigration judge incorrectly doubted that his proceedings were the cause of Rose's declining mental health. But that really is enveloped into this forward-looking analysis because he specifically argues that determining she was well in the moment was legal error because the immigration judge focused on how his removal did not focus on the child's on how his removal would impact her mental health in the future. But again, that's simply not true because we're not looking at the immigration judge's decision. We're looking at the Board's decision and the Board did engage in forward-looking analysis. And just to point out very quickly, in this argument on appeal to the Board, it's on pages five to seven, after he makes this argument, he also makes an argument on page 30 of the record that it didn't matter what the cause of decline of her mental health was, whether it was his proceedings, whether it was not his proceedings, that the immigration judge overall should have looked at this piece of evidence or this piece of evidence to determine that she would suffer the requisite hardship. So that's where that third footnote comes in with regards to that argument, too, because he conceded on appeal to the Board that it didn't matter what the cause of her declining mental health was. And so the Board found it unnecessary to address that specific part of the decision, and it's simply not part of it. And that's all the government has, unless your honors have any questions. Thank you. Thank you. And hit my mute button again. It's a constant problem. Yes, Mr. Bogert for rebuttal. Yes, your honor. I'll just be very brief. I think the lines of disagreement are very well established and have been stated. So we'll just say that our position is maintained that we maintain these two legal errors, especially with the first one. This was such a huge factor that immigration judge considered. It is just completely wrong and colored his analysis. And so we believe things should be remanded so that the Board of Immigration Appeals and the IJ can adequately apply the hardship analysis. Thank you. Very good counsel. Nice, concise, helpful arguments that are always appreciated and that was well briefed. And we will take it under invitement.